Verbeck vs. Scott, imp.

VERBECK, Appellant, vs. SCOTT, imp., Respondent.

71        59
111      ²337
54 LRA   680

*February 2 — February 28, 1888.*

*(1) Municipal bonds: Preliminary injunction to restrain disposal by · holder: Discretion. (2) Who is bona fide purchaser. (3) Elections: Failure of electors to vote.*

1. In this case the refusal of the circuit court to grant a preliminary injunction restraining the holder of municipal bonds from disposing of them pending the action to have them declared void, is *held* not to have been an abuse of discretion, the facts entitling the plaintiff to such relief not being clearly shown.
2. One who buys municipal bonds from a *bona fide* purchaser, is himself a *bona fide* purchaser, notwithstanding any prior knowledge on his part.
3. An election is not vitiated by the mere fact that a considerable number of the electors failed to vote.

APPEAL from the Circuit Court for *Winnebago* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced July 14, 1887, to restrain the town officers of Menasha from collecting a tax to pay certain bonds issued by such officers in 1871 to the Wisconsin Central Railroad Company, and to have said bonds declared void in the hands of the defendant *Scott*, and to restrain him from disposing of the same during the litigation. None of the defendants resisted the application for a temporary injunction except *Scott*, and upon the hearing the court made an order restraining such officers from collecting the tax, but refusing to restrain *Scott* from disposing of the bonds during the litigation. From so much of said order as refused to so restrain *Scott*, the plaintiff appeals.

It appears, from the plaintiff's showing, in effect, that May 10, 1870, the railroad company, pursuant to ch. 126, Laws of 1869, submitted to the voters of the towns of Menasha and Neenah, respectively, the proposition men-

tioned in *Menasha v. Wis. Cent. R. Co.* 65 Wis. 502, for their aid by each voting to such company $50,000 of its bonds in consideration of that amount of the capital stock of such company, and the building of its depot on block 3 on Doty's island, and its road from thence to the Wolf river, as therein provided; but in the event that Neenah failed to accept, and the required additional sum of $50,000 should be furnished to the company by individual subscription to stock in like amount and satisfactorily secured to be paid, the depot should be located, and the road constructed therefrom, in such place in said town of Menasha, and on such route as might be agreed upon between the company and the town, under the proposition as thereby qualified; that Neenah refused to accept the proposition; that Menasha accepted of it June 4, 1870; that July 15, 1871, Menasha town bonds to the amount of $50,000 were issued to the company, bearing date June 1, 1871, each payable to the company, or bearer, in New York, twenty years from date, with coupons attached for semi-annual interest at the rate of seven per cent.; that October 12, 1871, such town officers burned and destroyed all of said bonds, and October 26, 1871, issued similar bonds to the same amount; that the tax in the tax roll for paying the interest thereon in 1872 was restrained by order of the court February 18, 1873; that upon the organization of the city of Menasha in 1874, one fourth of said bonds remained outstanding against the town; that the company never constructed any railroad from said block 3 to the Wolf river, or to any other point; that the town officers knew, when they issued the bonds, that the company had not complied with their proposition; that during the time *Scott* was a resident of Menasha, and knew all the facts stated, and actively participated in procuring the vote; that May 20, 1887, the officers of the town agreed upon a compromise and settlement with *Scott*, whereby the town was to pay him $5,750 in full discharge

and satisfaction of said bonds so held by him; and the same was submitted to the qualified electors of the town at a special town meeting therefor June 6, 1887, and ratified and agreed to by 47 of the 83 votes cast thereat; and it is alleged that there were over 150 qualified electors in the town. Bad faith and collusion between *Scott* and such officers in making said settlement is charged, and denied on the part of the defense.

The complaint alleges that *Scott* "is not a *bona fide* holder of said bonds; and that he received the same well knowing all the facts and circumstances aforesaid in relation to the execution and issuing of said bonds; and that the same do not constitute a valid and *bona fide* indebtedness of said town of Menasha *to him*." This is denied in the same language, except the omission of the words "*to him*." The complaint alleges, upon information and belief, that if the $5,750 is not paid, *Scott* threatens and intends to remove the bonds from the state and dispose of the same to nonresidents who can enforce payment in the United States courts. This, however, is denied on the part of the defense. The defense denied that the company had not complied with the terms and conditions of its proposition submitted to the town; and, in effect, alleged that all the terms and conditions of said proposition had been complied with; that Neenah never subscribed to such railroad stock or any part thereof, and never issued its bonds to said company, and said company never had any Neenah bonds, whereupon the company made its starting point in Menasha and constructed its road to the Wolf river, as it had a lawful right to do; that the railroad runs nearer said block 3, and has a depot in Menasha and also in Neenah, giving both of said cities and the present town of Menasha better and nearer facilities for railroad purposes than if the station or starting point had been upon said block 3; that the city and town of Menasha several years ago settled and took up all said

bonds except the sixteen owned by *Scott*, and in such settle-
ment used and enjoyed $50,000 of stock issued and given
by the railroad company; that *Scott* had always been ad-
vised that the bonds were issued by authority of law; that
he received them in good faith, and knew the owner thereof
paid a full and valuable consideration therefor, having no
knowledge whatever of any injunction or restraining order
or any other fact or circumstance tending to invalidate the
same; that *Scott's* entire connection with said bonds was
*bona fide*, without any knowledge or information of any un-
lawfulness or irregularity in the issue or delivery thereof or
since, and he denies that he had owned and held the bonds
since about the time they were issued; that the railroad
was constructed from a point in Menasha to the Wolf river;
that the injunction mentioned in the complaint, and which
was issued July 31, 1871, was answered and never prosecuted
to final judgment; that the plaintiff therein had died, and
the suit never revived; that the tax-warrant to collect such
taxes was issued under ch. 216, Laws of 1887, returnable in
forty days; that all the bonds had been paid, except the
sixteen owned by Scott, and for one fourth of which the
town was liable.    There were other affidavits in support of
the allegations on the part of the defense, and asserting the
good faith of the settlement between the town officers and
*Scott* and the vote thereon by the qualified electors of the
town.

For the appellant there was a brief by *Gary & Forward*,
attorneys, and *Moses Hooper*, of counsel, and oral argument
by *Mr. Gary*.

For the respondent there was a brief by *Gabe Bouck*,
*Henry Fitzgibbon*, and *Smith & Schoetz*, and the cause was
argued orally by *Mr. Bouck*.    They argued, *inter alia*, that
when the material facts are denied an injunction should not
issue.    *Menasha v. M. & N. R. Co.* 52 Wis. 414.    It should
issue only when the right of the plaintiff is evident, *prima*

*facie*, free from doubt.    Extreme caution should be exercised.    Willard's Eq. Jur. 343; *Muir v. Howell*, 37 N. J. Eq. 39.    If the respondent bought the bonds from a *bona fide* holder, he has a good title, and can transmit it to a person having full knowledge of the illegality, if any, in their inception.    1 Daniel on Neg. Inst. sec. 803; Burroughs on Pub. Sec. 361; *Comm'rs v. Clark*, 94 U. S. 286; *Cromwell v. Sac*, 96 id. 59; *Bailey v. Bidwell*, 13 Mees. & W. 73; *Mitchell v. Catchings*, 23 Fed. Rep. 710; *Patterson v. Wright*, 64 Wis. 289; *Pringle v. Dunn*, 37 id. 449; *Kinney v. Kruse*, 28 id. 184.

CASSODAY, J.    The application for this preliminary injunction was undoubtedly addressed to the sound discretion of the trial court under the facts and circumstances alleged in the complaint and supported by affidavits.    Upon such hearing the defendant *Scott* controverted, and in fact disproved, many of such allegations; and alleged others as stated.    The court, in the exercise of such discretion, refused to restrain *Scott* from disposing of his bonds; and we are now asked upon the whole record, a brief summary of which is given above, to reverse that part of the order. After a careful examination of the record we are unable to say that such discretion has been abused.    The plaintiff brings this suit as a resident freeholder and tax-payer of the town issuing the bonds.    The burden was upon him to allege facts calling for equitable interference to prevent irreparable injury.    It seems to us that the complaint, with the allegations therein disproved, as stated, does not come up to this requirement.    It does not clearly appear that the railroad company did not comply with the proposition submitted in 1870, so far as Menasha was concerned.    It does not clearly appear that the particular bonds in question were issued in violation of any injunction.    It does pretty clearly appear that the railroad stock received in consider-

ation for such bonds was used by the town and city of Menasha, or one of them with the consent of the other, many years ago, in taking up and settling all of the bonds so issued, except those owned by *Scott*. It does not clearly appear that the sixteen bonds in question were never owned by a *bona fide* purchaser for a full and valuable consideration paid therefor. If they were ever owned by such purchaser, and subsequently were transferred to *Scott*, then he would be such *bona fide* purchaser, notwithstanding any prior knowledge on his part. It does not clearly appear that the compromise and settlement agreed upon by *Scott* and the officers of the town in May, 1887, was not honestly made and in good faith submitted to the qualified electors of the town at a special town meeting therefor, June 6, 1887, and in good faith ratified and agreed to by a majority of the votes cast at that election. The mere fact that a considerable number of such qualified electors failed to vote thereon did not vitiate the election. Under the circumstances stated we are unwilling to disturb the action of the trial court.

*By the Court.*— That part of the order of the circuit court appealed from is affirmed.